FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 30, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

HEATHER C.,[1]

               Plaintiff,

    v.

ANDREW M. SAUL, the Commissioner
of Social Security,

               Defendant.

No.   4:20-CV-5114-EFS

**ORDER GRANTING PLAINTIFF'S
SUMMARY-JUDGMENT MOTION
AND DENYING DEFENDANT'S
SUMMARY-JUDGMENT MOTION**

      Plaintiff Heather C. appeals the denial of benefits by the Administrative

Law Judge (ALJ). She alleges the ALJ 1) improperly determined her severe

impairments, 2) improperly discounted her symptoms as described by both Plaintiff

and her friend, 3) improperly considered the medical opinions, and 4) erred at step

five. In contrast, Defendant Commissioner of Social Security asks the Court to

affirm the ALJ's decision. After reviewing the record and relevant authority, the

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by

first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

Court grants Plaintiff's Motion for Summary Judgment, ECF No. 14, and denies the Commissioner's Motion for Summary Judgment, ECF No. 15.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[2] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[3] If the claimant is engaged in substantial gainful activity, benefits are denied.[4] If not, the disability evaluation proceeds to step two.[5]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical or mental ability to do basic work activities.[6] If the claimant does not, benefits are denied.[7] If the claimant does, the disability evaluation proceeds to step three.[8]

---

[2] 20 C.F.R. § 416.920(a).

[3] *Id.* § 416.920(a)(4)(i).

[4] *Id.* § 416.920(b).

[5] *Id.*

[6] *Id.* § 416.920(a)(4)(ii).

[7] *Id.* § 416.920(c).

[8] *Id.*

Step three compares the claimant's impairments to several recognized by the Commissioner as so severe as to preclude substantial gainful activity.[9] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[10] If an impairment does not, the disability evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[11] If the claimant can perform past work, benefits are denied.[12] If the claimant cannot perform past work, the disability evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[13] If so, benefits are denied. If not, benefits are granted.[14]

---

[9] *Id.* § 416.920(a)(4)(iii).

[10] *Id.* § 416.920(d).

[11] *Id.* § 416.920(a)(4)(iv).

[12] *Id.*

[13] *Id.* § 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[14] 20 C.F.R. § 416.920(g).

The claimant has the initial burden of establishing she is entitled to disability benefits under steps one through four.[15] At step five, the burden shifts to the Commissioner to show the claimant is not entitled to benefits.[16]

## II. Factual and Procedural Summary

In December 2017, Plaintiff filed a Title 16 application alleging disability.[17] Her disability claim was denied initially and upon reconsideration.[18] An administrative hearing was held by video before Administrative Law Judge Laura Valente.[19]

When denying Plaintiff's disability claim, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since October 3, 2017, the amended alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: degenerative disc disease, osteoarthritis of the right knee, fibromyalgia, obesity, personality disorder, and depressive disorder.

---

[15] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[16] *Id.*

[17] AR 232-40.

[18] AR 168-71, 178-80.

[19] AR 33-55.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform sedentary work except that she could:

  > stand and/or walk for up to two hours and sit for six hours in an eight-hour workday; never climb ladders, ropes, or scaffolds; occasionally push and/or pull with the right lower extremity; and occasionally crouch, crawl, balance, kneel, stoop, and climb ramps or stairs. [She could] perform simple routine tasks in two-hour increments; work superficially and occasionally with the general public; interact occasionally with supervisors; and work in the same room with coworkers, but not in coordination with them.

- Step four: Plaintiff was unable to perform past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as touchup screener, table worker, and toy stuffer.[20]

When assessing the medical-opinion evidence, the ALJ found:

- the reviewing opinions of Norman Staley, M.D., and Howard Platter, M.D., persuasive.

- the reviewing opinion of Jon Anderson, Ph.D., somewhat persuasive.

---

[20] AR 13-32.

- the reviewing opinion of Tasmyn Bowes, Psy.D., the evaluating opinion of Mary Alice Hardisen, ARNP, and the treating opinion of Caryn Jackson, M.D., unpersuasive.[21]

The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence.[22] Likewise, the ALJ discounted the lay statement from Plaintiff's friend.[23]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[24] Plaintiff timely appealed to this Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[25] The Commissioner's decision is set aside "only if it is not supported by substantial

---

[21] AR 23-24. Although the ALJ summarized the reviewing opinion of Renee Eisenhauer, Ph.D., the ALJ did not identify whether she found the opinion persuasive. AR 24.

[22] AR 21-24.

[23] AR 23.

[24] AR 1-11.

[25] 42 U.S.C. § 405(g).

evidence or is based on legal error."[26] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[27] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[28] The Court considers the entire record.[29]

Further, the Court may not reverse an ALJ decision due to a harmless error.[30] An error is harmless "where it is inconsequential to the [ALJ's] ultimate

---

[26] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[27] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[28] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[29] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[30] *Molina*, 674 F.3d at 1111.

nondisability determination."[31] The party appealing the ALJ's decision generally bears the burden of establishing harm.[32]

## IV.    Analysis

**A.    Step Two (Severe Impairment): Plaintiff establishes consequential error.**

Plaintiff argues the ALJ erred at step two by failing to identify her obstructive sleep apnea with hypoxemia, left knee disorder, and cardiac disorder as severe impairments. At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities.[33] This involves a two-step process: 1) determining whether the claimant has a medically determinable impairment based on the objective medical evidence, consisting of signs, symptoms, or laboratory findings, and 2) if so, determining whether the impairment is severe. A medically determinable impairment is not severe if the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work,"[34] including basic work activities such as walking, standing,

---

[31] *Id.* at 1115 (cleaned up).

[32] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

[33] 20 C.F.R. § 416.920(c); *see also id.* § 416.908.

[34] Soc. Sec. Ruling (SSR) 85-28.

sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting.[35]

Step two is "a de minimus screening device [used] to dispose of groundless claims."[36] "Great care should be exercised in applying the not severe impairment concept."[37]

Here, the ALJ found Plaintiff had the severe impairments of degenerative disc disease, osteoarthritis of the right knee, fibromyalgia, obesity, personality disorder, and depressive disorder.[38] The ALJ did not discuss obstructive sleep apnea with hypoxemia, a left knee disorder, or a cardiac disorder. The medical record, however, contains objective evidence of these impairments.

In 2018, a physician diagnosed Plaintiff with obstructive sleep apnea with independent hypoxemia with oxygen levels less than 88 percent.[39] As to Plaintiff's left knee, imaging from 2018 revealed mild to moderate arthrosis of the medial and lateral compartments, along with moderate arthrosis of the patellofemoral

---

[35] 20 C.F.R. § 416.921(a); SSR 85-28.

[36] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

[37] SSR 85-28.

[38] AR 19.

[39] AR 844-45.

compartment.[40] As to the cardiac disorder, an echocardiogram in 2018 revealed grade 2 moderate diastolic dysfunction, left ventricular hypertrophy, and a mildly enlarged left atrial size.[41] Because the record contains objective medical evidence of sleep apnea with hypoxemia, degenerative arthrosis in the left knee, and a cardiac disorder, the ALJ should have discussed these impairments at step two of the disability analysis, including whether these impairments had more than a minimal effect on Plaintiff's ability to work.[42]

The Commissioner argues that any step-two error is harmless because the ALJ resolved step two in Plaintiff's favor and moved on with the sequential analysis. While the step-two error may be harmless *at step two* because the ALJ resolved that step in Plaintiff's favor, the ALJ did not consider any of these impairments during the later sequential steps—or at least did not include such findings, record citations, or analysis to allow this Court to determine whether the

---

[40] AR 801.

[41] AR 874-75.

[42] The medical record indicate that Plaintiff was likely impacted by these conditions. *See, e.g.*, AR 393, 506-08, 869 (discussing abnormal gait or lower leg strength); AR 482 ("easily fatigued with LE strengthening exercises"); & AR 872, 882 (chest discomfort).

ALJ considered these impairments and any resulting limitations.[43] The Court cannot be certain, therefore, that the step-two error was not prejudicial at the later steps.

**B.    Plaintiff's Symptom Reports: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting her symptom reports. When examining a claimant's symptoms, the ALJ utilizes a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[44] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[45] General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what

---

[43] *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) ("Assuming without deciding that this omission constituted legal error [at step two], it could only have prejudiced Burch in step three (listing impairment determination) or step five (RFC) because the other steps, including this one, were resolved in her favor.").

[44] *Molina*, 674 F.3d at 1112.

[45] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

evidence undermines these claims.[46] "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."[47] If an ALJ does not articulate specific, clear, and convincing reasons to reject a claimant's symptoms, the claimant's corresponding limitations must be included in the RFC.[48]

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; 6) any non-treatment measures the claimant uses or has used to relieve pain or other symptoms; and 7) any other

---

[46] *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), and *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he discounted claimant's symptom claims)).

[47] *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

[48] *Lingenfelter*, 504 F.3d at 1035 ("[T]he ALJ failed to provide clear and convincing reasons for finding Lingenfelter's alleged pain and symptoms not credible, and therefore was required to include these limitations in his assessment of Lingenfelter's RFC.").

factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.[49] The ALJ is instructed to "consider all of the evidence in an individual's record" to "determine how symptoms limit ability to perform work-related activities."[50]

At the hearing, Plaintiff testified she has difficulties balancing when standing, is unable to stand for a long period of time (more than 15 minutes), walks with a cane, feels unsteady when walking for long distances or on stairs, is unable to sit for long periods of time, is limited by her leg and back pain, has hand cramps and numbness, is emotionally impacted by her loss of physical functioning, has anxiety about falling, and suffers drowsiness due to medications.[51] The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her "medically determinable impairments" "not entirely consistent with the medical evidence and the other evidence in the record."[52] To support this boilerplate finding, the ALJ highlighted:

- "Plaintiff's musculoskeletal impairments of degenerative disc disease, osteoarthritis of the right knee, and fibromyalgia" were consistently

---

[49] SSR 16-3p; 20 C.F.R. § 416.929(c).

[50] SSR 16-3p.

[51] AR 27-49. Plaintiff also reported symptoms in her Function Reports. AR 274-83, 297-314.

[52] AR 21.

treated with "conservative maintenance treatment," which included physical therapy, pool exercises, taking Vicodin and other opioid medications, a lumbar spine medial block injection, right-knee injections and arthroscopy surgery, use of a single point cane, diet, exercise, nutritionist counseling, over-the-counter anti-inflammatories, gentle stretching, light exercise, ice/heat, and soaking in Epsom salts.

- Imaging of her lumbar spine showed degenerative spondylosis but without acute abnormalities or abnormal motion on flexion or extension and only mild degenerative disc changes.

- Plaintiff noted that right knee injections and arthroscopy surgery provided moderate relief for her knee pain.

- Physical exams in 2018 did not mention any fibromyalgia tender points and she had normal inspection and full range of motion bilaterally in her upper and lower extremities in July 2019.[53]

---

[53] AR 21-22 (citing AR 385, 444 (Vicodin/Naproxen for chronic pain); AR 482-84 (physical therapy); AR 788 (medial branch block injection); AR 501 (right-knee injection); AR 783 (arthroscopy surgery); AR 730 (treating fibromyalgia "conservatively at this time" with anti-inflammatories, stretching, light exercises, relaxation techniques, ice, and Epsom salt); AR 804 (engaging in pre-diabetic weight-loss program and physical therapy); AR 811 (shallow water aquatic session).

The Court's review is limited to the reasons provided by the ALJ.[54] The only specific reason given by the ALJ to discount Plaintiff's physical pain and symptoms was that Plaintiff received conservative maintenance treatment. The ALJ properly considered the amount and type of treatment when assessing the intensity and persistence of Plaintiff's symptoms.[55] Yet, the ALJ's finding was conclusory: the ALJ failed to explain how the treatment constituted conservative maintenance treatment or how it was inconsistent with Plaintiff's reported symptoms. For instance, the ALJ did not explain why right-knee arthroscopy surgery to repair a tear of the medial meniscus, epidural injections to the lumbar spine and right knee, or continued treatment with opioid pain medication constituted conservative maintenance treatment for Plaintiff's impairments.[56]

The ALJ also generally found that Plaintiff's physical pain and symptoms were inconsistent with the objective medical evidence. While an ALJ may consider whether a claimant's symptoms are consistent with the objective medical evidence,

---

[54] *Garrison*, 759 F.3d at 1010 (recognizing that the court's review is limited to a reason relied on by the ALJ).

[55] *See* 20 C.F.R. § 416.929(c)(4).

[56] *See Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (finding the ALJ erred for failing to explain why the treatment, including facet and epidural injections to the claimant's neck and back and prescribed main medications, was conservative treatment for the claimant's fibromyalgia).

the ALJ may not solely rely on this reason to discount a claimant's symptoms and this reason may not be boilerplate.[57] Here, the ALJ failed to support her boilerplate finding with substantial evidence. For instance, the ALJ failed to explain how the short-term pain relief provided by the knee injections and the arthroscopy surgery were inconsistent with Plaintiff's longitudinal pain, reduced mobility and range of motion, and variable reduced strength in her lower extremities.[58] Rather than consider Plaintiff's knee, back, and fibromyalgia conditions in light of the overall diagnostic record,[59] the ALJ cherry picked normal physical findings from a July

---

[57] *Trevizo v. Berryhill*, 871 F.3d 664, 678–79, 682 (9th Cir. 2017) (recognizing that boilerplate language does not satisfy the specific, clear, and convincing reason standard).

[58] *See, e.g.*, AR 482-83, 494, 549, 807-08, 827, 830, 833 (noting reduced lower extremity knee strength and hip flexion). *See Garrison*, 759 F.3d at 1015 ("Garrison's medical records show that physical therapy afforded her only partial and short-lived relief of her lower back pain, and no effective relief for her radiating neck pain. . . . [E]pidural shots . . . relieved Garrison's back pain for only variable, brief periods of time, ranging from a couple of months to a few days.").

[59] *Ghanim*, 763 F.3d at 1164 (Treatment records must be viewed in light of the overall diagnostic record.").

2019 appointment for chest pain.[60] In comparison, a treatment record pertaining to a physical incapacity examination in August 2019 revealed pain to palpation at L4/5 and across the iliac process bilaterally, an equivocal straight leg raise on the right, positive straight leg raise on the left, decreased range of motion in the right knee with flexion, and stiffness in the right knee with passive range of motion.[61] Similarly, a physical therapy treatment note from June 2019 indicated tenderness in several areas and decreased range of motion.[62] The ALJ improperly cherry picked normal physical findings from a chest-pain appointment to support her conclusion that Plaintiff's treatment remedied her long-term back, knee, and fibromyalgia pain and symptoms.[63] Moreover, that Plaintiff's symptoms may have

---

[60] AR 855. *See Ghanim*, 763 F.3d at 114 (recognizing that a claimant's symptoms should not be discounted for nonrelevant normal findings); *Orn v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007) (requiring examination notes to be considered for the context in which they were prepared).

[61] AR 994.

[62] AR 812-13.

[63] *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (cleaned up) ("Although it is within the power of the Secretary to make findings concerning the credibility of a witness …, he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.").

been inconsistent with the objective medical evidence cannot serve as the sole reason to discount her reported symptoms.[64]

As to Plaintiff's mental-health symptoms, the ALJ again failed to offer a specific reason to discount these symptoms. Instead, the ALJ merely summarized some of the mental-health treatment records and highlighted that Plaintiff was in therapy, she was prescribed psychotropic medications, and she "had routinely unremarkable mental status exams" with good or euthymic moods during treatment.[65] That Plaintiff sought mental-health treatment through therapy and took prescribed psychotropic medications is not a legitimate—let alone a clear and convincing—reason to discount her mental-health symptoms. As to the ALJ's finding that Plaintiff had routinely "unremarkable" mental status exams with good or euthymic moods, several of the cited treatment notes indicate that Plaintiff was easily distracted and difficult to redirect with purposefully latent and pressured speech, uncomfortable due to pain, anxious, and/or odiferous with pressured speech.[66] Considering these abnormal findings in the cited "unremarkable" treatment notes, the ALJ's decision to discount Plaintiff's symptoms because of the

---

[64] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Varney v. Sec'y of HHS*, 846 F.2d 581, 585 (9th Cir. 1998) (superseded in part on other grounds by statute).

[65] AR 22-23.

[66] AR 382-83, 386-88, 461-62, 536, 564.

"unremarkable" mental status exams is not supported by substantial evidence. Moreover, that Plaintiff's mental-health symptoms may have been inconsistent with the objective medical evidence cannot serve as the sole reason to discount her symptoms.[67]

The ALJ also failed to consider Plaintiff's reported fatigue caused by her medications. One of the factors to consider when evaluating the intensity, persistence, and limiting effects of Plaintiff's symptoms includes the side effects of her medication.[68] The record reflects Plaintiff was observed as tired, easily fatigued with lower extremity strengthening exercises during her physical therapy, and tired upon arriving to a physical therapy appointment because she had to walk to the bus stop and the clinic.[69] Although an ALJ may discount symptom testimony, such as the reported medication side effects, by providing a specific, clear, and convincing reason, supported by the record,[70] the ALJ failed to do so here.

For the reasons explained above, the ALJ did not have specific, clear, and convincing reasons to reject Plaintiff's testimony about the intensity, persistence, or limiting effect of her pain. The ALJ, therefore, erred in rejecting Plaintiff's

---

[67] *See Rollins*, 261 F.3d at 857; *see also Varney*, 846 F.2d at 585 (superseded in part on other grounds by statute).

[68] SSR 16-3p; 20 C.F.R. § 416.929(c).

[69] AR 939, 482, 498.

[70] *Thomas*, 278 F.3d at 960.

symptom testimony. This error was consequential. Plaintiff testified, in part, that she is unable to sit for long periods of time, has to elevate her legs to obtain relief, and has difficulty standing without pain.[71] The vocational expert testified that an individual who has to elevate their feet above their heart throughout the day would not be able to sustain employment.[72] Had the ALJ credited Plaintiff's testimony about her limitations and pain, Plaintiff would have been determined disabled.

As explained below, on remand, if the ALJ discount's Plaintiff's symptom testimony, the ALJ must be specific about which testimony is being rejected and cite to specific evidence to explain why each symptom is being rejected. The ALJ's reasons for rejecting the symptom testimony must be clear and convincing.

## C. Lay Witness: Plaintiff establishes consequential error.

The ALJ discounted the statement from Plaintiff's friend because the symptoms reported by the friend were similar to the physical and mental symptoms reported by Plaintiff, which the ALJ discounted as being inconsistent with the objective medical evidence and other evidence.[73] "Testimony by a lay witness provides an important source of information about a claimant's impairments, and an ALJ can reject it only by giving specific reasons germane to

---

[71] AR 43-48.

[72] AR 53.

[73] AR 21-23.

each witness."[74] As discussed above, the ALJ failed to give specific reasons supported by substantial evidence for discounting Plaintiff's symptom reports, relying instead on a boilerplate finding. That error impacted the ALJ's assessment of the friend's statement, which the ALJ must reevaluate on remand.

**D.    Medical Opinions: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ erred by not fully crediting the opinions of Dr. Bowes, Dr. Jackson, and Nurse Hardison.

1.    <u>Standard</u>[75]

An ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings.[76] The ALJ need not however "give any specific evidentiary weight . . . to any medical opinion(s)."[77]  A medical opinion is a statement from a medical source about what the claimant can still do

---

[74] *Regennitter v. Comm'r*, 166 F.3d 1294, 1298 (9th Cir. 1999).

[75] For claims filed on or after March 27, 2017, such as Plaintiff's claim, new regulations apply that change the framework for how an ALJ evaluates medical opinion evidence. Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 416.920c.

[76] 20 C.F.R. § 416.920c(a), (b).

[77] Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 416.920c(a).

despite her impairments and whether the claimant has one or more impairment-related limitations in the following abilities:

- performing physical demands of work activities

- performing mental demands of work activities (such as understanding, remembering, carrying out instructions, maintaining concentration, persistence, or pace, and responding appropriately to supervision, co-workers, or work pressures in a work setting)

- performing sensory demands of work

- adapting to environmental conditions.[78]

The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[79] Supportability

---

[78] 20 C.F.R. § 416.913(a).

[79] *Id.* § 416.920c(c)(1)-(5). When assessing the medical source's relationship with the claimant, the ALJ is to consider the treatment length, frequency, purpose, and extent, and whether an examination was conducted. *Id.* The ALJ may also consider whether the medical source has familiarity with the other record evidence or an understanding of the disability program's policies and evidentiary requirements. *Id.*

and consistency are the most important factors, and the ALJ is required to explain

how both of these factors were considered:[80]

> (1) Supportability. The more relevant the objective medical evidence
> and supporting explanations presented by a medical source are to
> support his or her medical opinion(s) or prior administrative medical
> finding(s), the more persuasive the medical opinions or prior
> administrative medical finding(s) will be.

> (2) Consistency. The more consistent a medical opinion(s) or prior
> administrative medical finding(s) is with the evidence from other
> medical sources and nonmedical sources in the claim, the more
> persuasive the medical opinion(s) or prior administrative medical
> finding(s) will be.[81]

Typically, the ALJ may, but is not required to, explain how the other factors were

considered.[82]

---

[80] *Id.* § 416.920c(b)(2).

[81] *Id.* § 416.920c(c)(1)-(2).

[82] *Id.* § 416.920c(b)(2). When two or more medical opinions or prior administrative
findings "about the same issue are both equally well-supported . . . and consistent
with the record . . . but are not exactly the same," the ALJ is required to explain
how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were
considered. *Id.* § 416.920c(b)(3).

2.   <u>Dr. Bowes</u>

Based on a psychological examination in August 2019, Dr. Bowes diagnosed Plaintiff with post-traumatic stress disorder (PTSD) and persistent depressive disorder (chronic major depression, severe).[83] Dr. Bowes opined:

- moderate limitations with Plaintiff's ability to understand, remember, and persist in tasks by following very short and simple instructions, learn new tasks, perform routine tasks without special supervision, adapt to changes in a routine setting, make simple work-related decisions, beware of normal hazards and take appropriate precautions, ask simple questions or request assistance, and set realistic goals and plan independently.

- marked limitations with Plaintiff's ability to understand, remember, and persist in tasks by following detailed instructions, communicate and perform effectively in a work setting, and maintain appropriate behavior in a work setting.

- severe limitations with Plaintiff's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, and complete a normal workday and workweek without interruptions.

---

[83] AR 1006-14.

The ALJ found Dr. Bowes' opinion to be unsupported by both her findings during the examination, which the ALJ described as a "generally unremarkable mental status exam," and the longitudinal treatment record.[84] The ALJ mentioned that Dr. Bowes observed Plaintiff with a dysphoric mood and blunted affect, but the ALJ did not mention that Dr. Bowes also observed Plaintiff to have low energy, noted that Plaintiff's depression and anxiety scores were in the severe range, and found Plaintiff's fund of knowledge and concentration to be not within normal limits, citing the Trails testing results as support for the abnormal concentration finding. While the ALJ need not discuss every finding and reason given by the medical provider, the ALJ must do more than state conclusions.[85] Here, the ALJ's analysis was conclusory and was not supported by the cited evidence. Moreover, on several occasions, Plaintiff was observed as unable to understand material, highly distractible, and/or unable to be redirected.[86] The ALJ's brief analysis simply cherry picked "normal" findings without discussing them in the context of the

---

[84] AR 23-24.

[85] *Garrison*, 759 F.3d at 1012; *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (stating that "in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence" (quotation marks omitted)).

[86] *See, e.g.*, AR 383, 387-88, 409, 525, 610-11, 624, 640.

waxing and waning of Plaintiff's mental-health symptoms.[87] This was error. On remand, the ALJ must more fully explain whether Dr. Bowes' opinion was supported by the test results, clinical interview, and observations, and whether the opinion was consistent with the longitudinal medical record.

3.  Dr. Jackson

Dr. Jackson treated Plaintiff for several years and in August 2019 issued an opinion diagnosing Plaintiff with lumbar spondylosis (low back pain and sciatica), primary osteoarthritis of the right knee, fibromyalgia, bipolar disorder, PTSD, and prediabetes–hypertension.[88] Dr. Jackson opined that Plaintiff was severely limited, i.e., that she was unable to meet the demands of sedentary work, and that she was:

- mildly limited by her prediabetes–hypertension

- moderately to markedly limited due to her fibromyalgia

- markedly limited by her lumbar spondylosis (low back pain and sciatica) and bipolar disorder

- markedly to severely limited due to her PTSD and right-knee osteoarthritis.

---

[87] *Ghanim*, 763 F.3d at 1164 (emphasizing that treatment records must be viewed considering the overall diagnostic record); *Gallant*, 753 F.2d at 1456 (disallowing the ALJ from cherry picking evidence to support a conclusion that contradicts the overall diagnostic record).

[88] AR 991-93.

The ALJ discounted Dr. Jackson's opinion because it was inconsistent with the complete medical record and Dr. Jackson's accompanying treatment record, which noted that Plaintiff's mental status exam was normal and recommended that Plaintiff take over-the-counter medication for her musculoskeletal pain.[89] Yet, the ALJ did not discuss that Plaintiff was observed with pain on L4/5 and across the iliac process bilaterally and had an equivocal straight leg raise on the right, a positive straight leg raise on the left, some decreased range of motion on flexion with the right knee, and stiffness in the right knee with passive range of motion, or that Plaintiff was prescribed opiate pain medication. In addition, the ALJ did not discuss that although Dr. Jackson found Plaintiff to be orientated with appropriate mood and affect, Dr. Jackson also found Plaintiff's depression screening score consistent with severe depression and recommended that Plaintiff follow-up with her mental-health treatment providers. The ALJ's summary analysis of Dr. Jackson's opinion indicates the ALJ cherry picked the "normal" findings without considering the complete diagnostic picture.[90] This was error. On remand, the ALJ

---

[89] AR 23 (citing AR 994-1004).

[90] *See Ghanim*, 763 F.3d at 1164 (emphasizing that treatment records must be viewed considering the overall diagnostic record); *Gallant*, 753 F.2d at 1456 (disallowing the ALJ from cherry picking evidence to support a conclusion that contradicts the overall diagnostic record).

is to meaningfully articulate whether Dr. Jackson's opinion is supported by and consistent with the record.

    4.   <u>Nurse Hardison</u>

Nurse Hardison evaluated Plaintiff in October 2017 and diagnosed her with hypertension, ganglion cyst on her right hand, right knee compartmental osteoarthritis, right knee chondromalacia-patella, right Achilles' tendonitis, fibromyalgia, polycystic ovary syndrome, PTSD, borderline personality, and bipolar disorder. Nurse Hardison noted that Plaintiff's mental-health conditions were managed by others and opined that Plaintiff's ganglion cyst significantly interfered with her ability to perform one or more basic work-related activities and her fibromyalgia, right knee, and Achilles conditions either very significantly or severely interfered with her ability to perform one or more basic work-related activities.[91]

The ALJ found Nurse Hardison's opinion unpersuasive because it was more limiting than her objective findings, which the ALJ found contained unremarkable range-of-motion test results and did not reveal any significant deviations from the form's referenced values.[92] However, the range-of-joint-motion form indicated the following deviations: neck lateral bending, 40/45 degrees on the left and right; neck

---

[91] Nurse Hardison opined that Plaintiff's other physical impairments did not interfere with her ability to work.

[92] AR 23.

rotation, 60/80 degrees on the left and right; left hip backward extension, 20/30 degrees; right hip backward extension, 20/30 degrees; hip flexion with right knee flexed, 50/100 degrees; hip flexion with right knee extended, 70/100 degrees; right and left hip adduction, 10/20 degrees; right and left hip abduction, 20/40; and right knee flexion, 80/150 degrees. The ALJ did not explain how these deviations were not "significant." Moreover, Nurse Hardison reviewed an MRI revealing bilateral facet degeneration at L3/4 and an EMG revealing decreased innervation and axonal loss bilaterally. Because Nurse Hardison's opinion was based on range-of-motion deviations and imaging indicating impairment, the ALJ's conclusory findings are inadequate without more explanation or supporting evidence.

E.     **RFC**

Plaintiff argues the RFC is consistent with disability because the vocational expert testified that an individual who is limited to only occasional interaction with supervisors and superficial, non-coordination contact with coworkers is unable to complete the initial training and probation period. This argument fails as the vocational expert also testified that the three identified sedentary unskilled jobs would require very little in the way of training and therefore the three positions were consistent with the RFC's social-interaction limitations.[93] Nonetheless, remand is necessary for the reasons set forth above.

---

[93] AR 52-54.

**F.     Remand: Further proceedings are needed.**

Plaintiff submits a remand for payment of benefits is warranted because 1) she met or equaled Listing 3.02(c)(3) (obstructive sleep apnea and hypoxemia) or Listing 1.02A (unable to ambulate effectively), and 2) she is unable to sustain the exertional and nonexertional requirements of sustained work.[94]

The decision whether to remand a case for additional evidence, or simply to award benefits, is within the Court's discretion.[95] Remand for further proceedings is the usual course, absent clear evidence from the record that a claimant is entitled to benefits.[96] For instance, remand for further proceedings is appropriate when "there are outstanding issues that must be resolved before a determination can be made, or if further administrative proceedings would be useful."[97]

---

[94] Plaintiff also mentioned the ALJ should have considered Listing 4.02(A)(2) because of her cardiac disorder, but she did not argue an award of benefits was required because she met or equaled Listing 4.02(A)(2).

[95] *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[96] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

[97] *Leon*, 880 F.3d at 1047.

Here, there are various inconsistencies and conflicts in the record that make further administrative proceedings useful. For example, while Plaintiff often appeared with appropriate mood and affect, Plaintiff was also noted about once every four months as being easily distracted and difficult to redirect. In addition, although Plaintiff used a cane to ambulate, there are references to a stable gait. Therefore, the extent to which Plaintiff's physical conditions impact her walking, standing, sitting, and navigating stairs is unclear. The ALJ, not this Court, must assess whether Plaintiff's symptoms prevent her from sustaining fulltime work.

On remand, a physical consultative examination is needed. The consultative examiner must be given sufficient medical records to allow for a longitudinal perspective, including the imaging of Plaintiff's knees and back, the right knee surgery records, the physical therapy records after the right knee surgery, and Dr. Jackson's August 2019 opinion and treatment record.[98]

The ALJ is to reevaluate the sequential process beginning at step two. This includes reconsidering Plaintiff's symptoms and the medical evidence and opinions. If the ALJ again discounts Plaintiff's symptoms, the ALJ must articulate clear and convincing reasons for doing so.[99] General findings are insufficient because the

---

[98] *See, e.g.*, AR 783-87, 800-12, 829-34, 871, 994-1004. The consultative examiner is to append the records that the examiner reviewed to the report or identify the records reviewed.

[99] *Ghanim*, 763 F.3d at 1163 (quoting *Lingenfelter*, 504 F.3d at 1036).

Court cannot affirm discounting Plaintiff's symptoms for a reason not articulated by the ALJ.[100] The ALJ must identify what symptoms are being discounted and what evidence undermines these symptoms.[101] When assessing Plaintiff's mental health symptoms, the ALJ is encouraged to give more weight to the mental health findings made during mental health examinations or treatment sessions, rather than during appointments for solely physical conditions.[102]

## V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

---

[100] *See Garrison*, 759 F.3d at 1010.

[101] *Id*. (quoting *Lester*, 81 F.3d at 834, and *Thomas*, 278 F.3d at 958 (requiring the ALJ to sufficiently explain why he discounted claimant's symptom claims)).

[102] *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (comparing psychologist's mental health findings against findings from other mental health professionals).

1

4.     The case shall be **CLOSED**.

2

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and

3

provide copies to all counsel.

4

**DATED** this 30th day of June 2021.

5

6
_Edward F. Shea_
_____
EDWARD F. SHEA
Senior United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23